# EXHIBIT A

Eric D. Katz | Atty. No. 016791991
David M. Estes | Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Attorneys for Plaintiff*



| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER, | SUPERIOR COURT OF NEW JERSEY, LAW DIV., SOMERSET COUNTY DOCKET NO. SOM-L-_248_-16 |
|     Plaintiff, | |
| vs. | |
| AETNA LIFE INSURANCE CO.; AETNA HEALTH INC.; AETNA HEALTH INSURANCE CO.; and ABC CORPS. 1-10, | Civil Action |
| | **COMPLAINT AND JURY DEMAND** |
|     Defendants. | |

Plaintiff, North Jersey Brain & Spine Center, by way of Complaint against

defendants, alleges as follows:

## THE PARTIES

**A.**    <u>The Plaintiff</u>

    1.    Plaintiff North Jersey Brain & Spine Center ("NJBSC") is a medical

practice specializing in neurosurgical procedures and treatment of the brain and spinal

cord, and it has its primary office at 680 Kinderkamack Road, Suite 300, Oradell, New

Jersey 07649. At all relevant times, NJBSC was an out-of-network, or non-participating,

healthcare provider that provided medically necessary medical and surgical services to

seven (7) patients[1] who are covered under healthcare plans sponsored, funded, operated, controlled and/or administered by defendants.

**B.**     **The Defendants**

2.      Defendant Aetna Life Insurance Co. maintains its corporate offices at 151 Farmington Avenue, Hartford, Connecticut 06156.  It is part of the Aetna brand, a group of managed care companies consisting of plans providing healthcare coverage to members and their dependents, as well as administrative services to self-funded plans.  Its plans provided out-of-network health and medical coverage in New Jersey to patients of plaintiff.

3.      Defendant Aetna Health Inc., a New Jersey corporation, maintains its corporate offices at 55 Lane Road, Fairfield, New Jersey 07004.  It is also part of the Aetna brand, a group of managed care companies consisting of plans providing healthcare coverage to members and their dependents, as well as administrative services to self-funded plans.  Its plans provided out-of-network health and medical coverage in New Jersey to patients of plaintiff.

4.      Defendant Aetna Health Insurance Co. maintains its corporate offices at 333 Earle Ovington Boulevard, Suite 104, Uniondale, New York 11553.  It is part of the Aetna brand, a group of managed care companies consisting of plans providing healthcare coverage to members and their dependents, as well as administrative services to self-funded plans.  Its plans provided out-of-network health and medical coverage in New Jersey to patients of plaintiff.

---

[1]     To comply with HIPPA confidentiality and patient privacy, each patient will be identified herein only by initials and his/her Aetna identification number.

5.     Aetna,[2] upon information and belief, had discretionary control and authority over the management of most, if not all, of the plans of the 7 patients to whom NJBSC rendered services.

6.     Defendants ABC Corps. 1-10 are at present unidentified, fictitious entities that are self-funded plans or other plans providing healthcare coverage to their members and/or their dependents, which on information and belief provide medical coverage in New Jersey for medically necessary medical and surgical services.

### JURISDICTION & VENUE

7.     The Court has jurisdiction over defendants because they: (a) are New Jersey residents, having incorporated in New Jersey or having headquarters or offices in this State; (b) conduct business in the State of New Jersey and so deriving benefits and privileges from this State, including but not limited to, contracting to provide healthcare plans to residents of New Jersey or contracting to provide plans that permit members or dependents to obtain medical care in New Jersey, and so are subject to New Jersey law, regulation and oversight governing defendants' health insurance plans; and/or (c) have consented to the jurisdiction of New Jersey by registering and being authorized to do business in this State.

8.     The medical services at issue in this matter were rendered in New Jersey.

9.     Venue is proper pursuant to Rule 4:3-2, as defendants actually do business in Somerset County, New Jersey.

---

[2]     Aetna Life Insurance Co., Aetna Health Inc. and Aetna Health Insurance Co. are referred to herein collectively as "Aetna."

## SUBSTANTIVE ALLEGATIONS

10.    At all relevant times, plaintiff NJBSC was an out-of-network, or non-participating, healthcare provider that rendered the following medically necessary medical and surgical services to the following seven (7) patients.

11.    Patient S.Q. is covered by a plan insured and/or administered by defendants (Aetna Member ID W177215835).  In September 2015, S.Q. underwent authorized, medically necessary spine surgery.  In agreeing to perform the surgery, NJBSC relied on Aetna's pre-authorization, expecting appropriate payment.  NJBSC billed UCR charges, but was the recipient of two different Aetna adjudications, one lower than the next, resulting in not only significant underpayment but also a recoupment of a portion of that underpayment.  In February 2016, NJBSC filed an unsuccessful appeal to Aetna disputing its underpayment.

12.    Patient R.M. is covered by a plan insured and/or administered by defendants (Aetna Member ID W208132326).  In October 2014, R.M underwent an authorized, medically necessary cerebral angiogram and carotid artery segment pipeline embolization and device placement.  In April 2015, R.M. underwent an authorized, medically necessary follow-up angiogram.  Following both services, NJBSC billed UCR charges, but was the recipient of gross underpayment by Aetna.  In April 2015, NJBSC attempted to resolve at least some of the underpayment disputes with Aetna's agent, Global Claims Services, without success.

13.    Patient W.S. is covered by a plan insured and/or administered by defendants (Aetna Member ID W460663210-02).  In December 2014, W.S. underwent an authorized, medically necessary stage 2 placement of a right-sided DBS battery for bilateral DBS

electrodes for treatment of Parkinson's disease. Stage 1 of the procedure was previously paid at UCR by Aetna. However, stage 2 was paid inconsistently at Medicare-based rates, and thus was substantially underpaid. In January 2015, NJBSC filed an unsuccessful appeal to Aetna disputing its underpayment.

14.    Patient E.R. is covered by a plan insured and/or administered by defendants (Aetna Member ID W206304705). In June 2015, E.R. arrived at the hospital emergency room via ambulance and underwent emergent surgical treatment for a subarachnoid hemorrhage. NJBSC submitted UCR charges but was significantly underpaid for its services. In September 2015, NJBSC filed an unsuccessful appeal to Aetna disputing its underpayment.

15.    Patient O.I. is covered by a plan insured and/or administered by defendants (Aetna Member ID W022427730). In April 2014, O.I underwent authorized, medically necessary surgery including an angiogram. NJBSC submitted a claim to Aetna for reimbursement for the services rendered expecting to be paid 80% of its billed charged pursuant to MultiPlan. Aetna, however, significantly underpaid the claim and did not compensate plaintiff in accordance with the MultiPlan rate. In July 2014, NJBSC filed an unsuccessful appeal to Aetna disputing its underpayment.

16.    Patient B.R. is covered by a plan insured and/or administered by defendants (Aetna Member ID W176464347). In October 2013, B.R. underwent authorized, medically necessary surgery that included the placement of a cervical spinal cord stimulator. NJBSC submitted a claim to Aetna for reimbursement for the services rendered, but only partial payment was made. Payment was improperly denied for certain codes although it is undisputed that Medicare pays for said codes and Aetna considers

Medicare the "gold standard" authority when processing claims. In December 2013, NJBSC filed an unsuccessful appeal to Aetna disputing its underpayment.

17.     Patient C.C. is covered by a plan insured and/or administered by defendants (Aetna Member ID W153555595). In July 2013, C.C. underwent authorized, medically necessary surgery that included a craniotomy. NJBSC submitted UCR charges for payment. Aetna, however, denied payment falsely concluding that the patient's no-fault benefits should cover treatment despite the fact that NJBSC provided unequivocal evidence that C.C.'s no-fault benefits had been exhausted. In 2014, NJBSC attempted to resolve this disputed claim amicably and directly with Aetna's law department, but to no avail.

18.     With respect to each patient referenced above, NJBSC had the patient complete forms or other documents providing his/her insurance information. NJBSC also created documents detailing the procedures performed, including operative reports, insurance information and amounts due. Plaintiff then submitted clean, timely and proper claims to defendants, including the necessary information and supporting documents.

19.     With respect to each patient and claim referenced above, at all relevant times defendants provided the patients with out-of-network coverage, emergency services coverage and/or authorized the services rendered, thus permitting the patients to seek treatment from NJBSC. Preauthorization, or preapproval, is not required when an out-of-network provider is rending emergency, urgent or related services.

20.     Depending on the type of services rendered, pursuant to New Jersey law and regulations, defendants are obligated to pay NJBSC 100% of plaintiff's billed usual, customary and reasonable ("UCR") fees, less the patient's copay, coinsurance or

deductible, if any, for emergency services and/or is required to make payment to plaintiff within the time period set forth in the Healthcare Information Networks and Technologies Act ("HINT") and the Health Claims Authorization, Processing and Payment Act ("HCAPPA"), *i.e.*, 30 days for electronic claims and 40 days for non-electronic claims for all services.

21.    The UCR fee is defined as, or is reasonably interpreted to mean, the amount that out-of-network providers, like plaintiff, normally charge to patients in the free market, *i.e.*, without an agreement with an insurance company or other payor to reduce such a charge in exchange for obtaining access to Aetna's members and beneficiaries. The UCR fee means the usual charge for a particular service by providers in the same geographic area with similar training and experience (a north New Jersey neurosurgical practice).

22.    However, defendants systematically failed to issue proper payment for the medical and surgical services rendered by plaintiff. Instead, defendants issued gross underpayment and/or no payment at all and/or engaged in improper recoupment of prior payments. In making improper payments, defendants' actions or inactions were unlawful, improper and arbitrary because defendant(s) failed to calculate the *amount* of the payment in accordance with the plans of the patients and/or the requirements of New Jersey statutory, regulatory and/or common law.

23.    With respect to the patients and claims referenced above, as well as a matter of regular business practice, plaintiff NJBSC engaged in regular communications and discussions with Aetna and its agents (*e.g.*, Global Claim Services) regarding coverage, reimbursement, negotiation of disputes, and other issues; plaintiff submitted its claims directly to Aetna; these provider-submitted claims were processed by Aetna; when Aetna

7

issued (under)payments, it issued direct reimbursement to NJBSC; Aetna issued Explanation of Benefit statements ("EOBs") directly to NJBSC; and NJBSC undertook and engaged in numerous appeals of Aetna's reimbursement and payment decisions.

24.     In addition to the standard means for resolving reimbursement and payment disputes with Aetna (and in an effort to avoid balance billing the patients), NJBSC engaged in extended, direct negotiations via telephone and email with various Aetna employees, including an Account Manager and an Escalated Specialist, in an effort to reach a global resolution and address Aetna's systematic practice and/or policy of grossly underpaying for emergency medical services rendered by NJBSC, including claims at issue in this matter, and to avoid litigation.  However, Aetna became nonresponsive and broke off the negotiations.

25.     With respect to the patients and claims referenced above, plaintiff exhausted defendants' appeal process by filing repeated and numerous appeals, and also by engaging in direct global negotiations with various Aetna employees.

26.     Aetna's appeal process is also futile, and plaintiff has not been provided access to a meaningful review process.  Plaintiff made repeated and exhaustive efforts to address defendants' systematic failure to issue proper payment or comply with New Jersey law.  However, Aetna refused to issue proper payment, to respond to plaintiff's communications or to alter its/their policy with respect to the claims at issue in this matter. Further appeals would be futile.

27.     Throughout the parties' course of dealings and numerous forms of communication and interaction, Aetna voluntarily and freely engaged with and dealt directly with NJBSC.  Nor did Aetna ever advise, reference or disclose to NJBSC any

impediment to dealing directly with plaintiff to resolve these and other reimbursement disputes. NJBSC relied in good faith on Aetna's conduct and the parties' course of dealing.

28.     By and through this lawsuit, NJBSC now seeks damages due to defendants' actions.

29.     All of the subject claims arise from New Jersey state common, statutory and regulatory law, and not from any purported federal law or statute. Plaintiff has asserted direct claims and causes of action that are not predicated on an assignment of benefits from the patient.

30.     The claims in this lawsuit dispute the reimbursement amounts paid by defendants and thus do not arise under or implicate federal subject matter jurisdiction under the Employee Retirement Income Security Act (ERISA), or any other federal or statutory regulatory scheme. This lawsuit addresses defendants' failure to provide the appropriate *amount* of coverage to the patients and defendants' failure to properly *reimburse* plaintiff for its services to those patients. There is no dispute that all of defendants' plans at issue provide coverage for the patients and the medical and surgical services rendered by plaintiff that are in dispute.

## FIRST COUNT
### (Breach of Implied Contract)

31.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

32.     Defendant(s) indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that defendant(s) would pay for

medical and surgical services provided, including the emergency services provided by NJBSC, based on the terms of the patient's healthcare plan(s) and applicable law.

33.    Defendants represent that their members and beneficiaries are covered for out-of-network treatment and/or emergency care (where rendered), that they may go to any doctor or emergency room when they need emergency care, and that they will only be responsible to pay the plan's copayments, coinsurance and deductibles at an in-network level when emergency services are rendered.

34.    In addition, defendants were paid premiums by the members for healthcare coverage and, pursuant to said premiums, were legally obligated to maintain and provide an adequate network of sufficient physicians, including qualified neurosurgeons and other specialists, to satisfy the medical needs of defendants' member/dependent population.

35.    Further, Aetna, upon information and belief, reviewed and approved the standard provider agreement of MultiPlan, Inc. ("MultiPlan").   Aetna also knew that NJBSC entered into such an agreement, and that the agreement states that plaintiff is entitled to reimbursement at the rates set forth therein.   Defendants used the MultiPlan network, but failed to properly reimburse plaintiff in accordance with the MultiPlan provider agreement.

36.    Aetna and the other defendants also know that New Jersey providers, like NJBSC, are required by law to treat defendants' members and beneficiaries if they require emergency or related medical care.

37.    Defendant(s) further indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that defendant(s) would pay the usual, reasonable and customary ("UCR") amounts based upon what other healthcare

providers of the same specialty in the same geographic area charge for the services rendered by NJBSC.

38.    Defendant(s) also indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that the term "reasonable and customary," "reasonable and fair," "prevailing rate," or similar terms are consistent with the standard that healthcare plans pay for out-of-network coverage.

39.    Defendant(s) further indicated, by a course of conduct, dealings and the circumstances surrounding the relationship, to NJBSC that they would properly pay for services they indisputably cover including where exhaustion of underlying primary coverage has already occurred and where procedures are properly paid under Medicare policy and/or guidelines.

40.    NJBSC rendered medically necessary surgical and medical services to patients covered under the healthcare plan(s) of defendant(s), and in doing so, plaintiff reasonably expected defendant(s) to properly compensate plaintiff.

41.    A reasonable person in the position of defendant(s) would know or reasonably should have known that plaintiff was performing the services expecting that defendant(s) would pay for them appropriately.

42.    Despite indicating to NJBSC by a course of conduct, dealings and the circumstances surrounding the relationship that defendant(s) would properly reimburse plaintiff for either its actual charges as an out-of-network provider or its UCR rate, defendant(s) failed to do so.

43.    The failure of defendant(s) to pay the reasonable value of services constitutes breach of the implied contract between defendant(s) and NJBSC.

44.    As a result of this breach, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)    Compensatory damages;

b)    Interest;

c)    Costs of suit;

d)    Attorneys' fees; and

e)    Such other relief as the Court deems equitable and just.

## SECOND COUNT
### (Breach of the Covenant of Good Faith & Fair Dealing)

45.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

46.    The law implies in every contractual relationship, including that between plaintiff and defendants, a covenant of good faith and fair dealing.  Defendants are required to act in a manner that is consistent with plaintiff's reasonable expectations.

47.    Defendant(s) acted with an improper motive and injured plaintiff's rights and benefits under the contract, and breached the contract through acts of commission and omission described herein that are wrongful and without justification.

48.    As a result of this breach, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)    Compensatory damages;

b)    Interest;

c)    Costs of suit;

d)    Attorneys' fees; and

e)    Such other relief as the Court deems equitable and just.

12

**THIRD COUNT**
(Unjust Enrichment & *Quantum Meruit*)

49.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

50.     Defendants have enriched themselves unjustly at the expense of plaintiff NJBSC.

51.     At all relevant times, defendants refused to pay NJBSC correctly for the medical services it provided to its patient(s) covered under plans sponsored, funded, insured and/or administered by defendant(s), contrary to the insurance provided by the respective plan(s) to the members and dependents, and contrary to the common law, statutory and regulatory obligations of defendant(s).

52.     Defendants were paid premiums by the members for out-of-network and/or emergency services coverage and, pursuant to said premiums, defendants were legally obligated to provide such coverage to plan members and their dependents.

53.     To satisfy its coverage and legal obligations, defendants required the services of NJBSC to render medical services, including emergency and urgent medical care where applicable.  Plaintiff did, in fact, render such surgical services to defendants' members and their dependents.

54.     Defendants have, therefore, received and retained a benefit as a result of plaintiff rendering medical services that remain grossly underpaid.  Thus, Aetna and the other defendants have been unjustly enriched through the use of funds that earned interest or otherwise added to their profits when said money should have been paid in a timely and appropriate manner to plaintiff.

55.     As a result of defendants' unjust enrichment, plaintiff has suffered damages.

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)      Compensatory damages;

b)      Interest;

c)      Costs of suit;

d)      Attorneys' fees; and

e)      Such other relief as the Court deems equitable and just.

### FOURTH COUNT
### (Interference with Economic Advantage)

56.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

57.     Plaintiff had a reasonable expectation of economic advantage or benefit belonging or accruing to the plaintiff.

58.     Defendant(s) knew, or reasonably should have known, of plaintiff's expectancy of economic advantage.

59.     Defendant(s) wrongfully interfered with plaintiff's expectancy of economic advantage or benefit.

60.     But for defendants' wrongful act, it is reasonably probable that plaintiff would have realized its economic advantage or benefit.

61.     As a result, NJBSC has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)      Compensatory damages;

b)      Interest;

c)      Costs of suit;

d)    Attorneys' fees; and

e)    Such other relief as the Court deems equitable and just

## FIFTH COUNT
### (Violations of New Jersey Regulations Governing Payment for Emergency Services Rendered by an Out-of-Network Provider)

62.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

63.    New Jersey's health insurance regulations require that, when a privately-insured patient seeks emergency services, an out-of-network provider must be paid a large enough amount to ensure that the patient is not balance billed, that is, charged for the difference between the insurer reimbursed amount and the provider's billed charges. This so-called "emergency room mandate" applies even if it means that the healthcare insurer must pay the provider its actual billed charges minus the copayments, coinsurance and deductibles that would have applied had the patient sought treatment from an in-network provider.

64.    Plaintiff has a private right of action, express or implied, to prosecute its claim under these regulations.

65.    Aetna is obligated to pay NJBSC one-hundred percent (100%) of plaintiff's UCR fees, less the patient's applicable copay, coinsurance or deductible, pursuant to N.J.A.C. 11:22-5.8, 11:24-5.3, 11:24-5.1, and 11:24-9.1(d).

66.    Contrary to New Jersey healthcare regulations, however, Aetna has not properly paid for the emergency surgical services rendered and plaintiff's bills remain outstanding for those services that were emergent in nature.

67.   As a result of Aetna's violations of these health insurance regulations and related legal obligations, plaintiff has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants for:

        a)     Compensatory damages;

        b)     Interest;

        c)     Costs of suit;

        d)     Attorneys' fees; and

        e)     Such other relief as the Court deems equitable and just

## SIXTH COUNT
### (Violations of HINT & HCAPPA)

68.   Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

69.   Pursuant to the Healthcare Information Networks and Technologies Act ("HINT"), N.J.S.A. 17B:30-23, 17:48-8.4, 17:48A-7.12, 17:48E-10.1, 17B:26-9.1, 17B:27-44.2 and 26:2J-8.1, and the corresponding regulations, N.J.A.C. 11:22-1, *et seq.*, Aetna is required to remit payment to a healthcare provider for an "eligible" non-capitated claim for medical services no later than thirty (30) calendar days following electronic receipt of the claim by Aetna, or forty (40) calendar days following non-electronic receipt of the claim by Aetna.  In the alternative, Aetna is required to notify the provider within seven (7) calendar days of the specific reasons for a denial or dispute, and to expeditiously request any missing information or documentation required to process the claims, pursuant to the Health Claims Authorization, Processing and Payment Act ("HCAPPA").

70.   Plaintiff has a private right of action, express or implied, to prosecute its claims under HINT, HCAPPA and their regulations.

16

71.    All overdue payments must bear simple interest at the rate of twelve (12) percent per annum, pursuant to HCAPPA.

72.    Despite its statutory duties, Aetna as a matter of practice and/or policy delayed payment of properly submitted claims from plaintiff and did not pay the claims correctly or at all, and then did not pay interest on delayed payments. By delaying payment of a claim, Aetna earned and continues to earn profits from its use of the funds, profits that it would not have earned or continued to earn if payment were made in a timely manner.

73.    NJBSC has submitted "clean" or "eligible" non-capitated claims that Aetna failed to pay within the prescribed statutory time period despite numerous attempts by plaintiff to address and resolve these issues with Aetna. These practices by Aetna are in violation of HINT and HCAPPA.

74.    As a result of Aetna's violations of HINT and HCAPPA, plaintiff has been damaged.

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)    Compensatory damages;

b)    Interest;

c)    Costs of suit;

d)    Attorneys' fees; and

e)    Such other relief as the Court deems equitable and just

## SEVENTH COUNT
### (Business Libel)

75.    Plaintiff repeats and realleges each and every allegation set forth above as if set forth in full herein.

76.     Aetna published statements to plaintiff's patients, and others that are derogatory and harmful to plaintiff's business and professional reputation for the purpose of destroying or harming plaintiff's business.

77.     These statements to third-parties published in Aetna's plan documents state that use of Aetna's in-network physicians will "improve care" and is tied to "better health outcomes," communicating to Aetna's members and beneficiaries that out-of-network physicians, like NJBSC, provide worse or lesser medical care than Aetna's in-network providers.  In addition, Aetna published to third-parties harmful statements in its EOBs, which issue gross underpayments indicating to patients that NJBSC's billed charges are incorrect and/or excessive, and which are calculated to tarnish plaintiff's reputation and/or to ruin plaintiff's business.

78.     Aetna's plan documents and EOBs were disseminated to NJBSC's patients.

79.     Plaintiff has suffered economic damages as a direct result of defendants' business libel.

**WHEREFORE**, plaintiff demands judgment against defendants for:

a)     Compensatory damages;

b)     Punitive damages;

c)     Interest;

d)     Injunctive relief;

e)     Costs of suit;

f)     Attorneys' fees; and

g)     Such other relief as the Court deems equitable and just

18

## CERTIFICATION PURSUANT TO RULE 4:5-1(b)2

ERIC D. KATZ, of full age, hereby certifies that:

1     I am a partner with the law firm of Mazie Slater Katz & Freeman, LLC, attorneys for plaintiff in this action.

2.    To the best of my knowledge, the matter in controversy is not the subject of any other action pending in any Court or any pending arbitration proceeding.

3.    There is, however, a related action filed by plaintiff against Aetna and others, captioned: <u>North Jersey Brain & Spine Center v. Aetna Life Ins. Co., et al.</u>, Docket No.: SOM-L-000174, and it is respectfully requested that the within matter be assigned to the same pre-trial judge for handling.

4.    No other actions or arbitration proceedings are contemplated by this plaintiff against the pled defendants at this time.

5.    I know of no other parties that should be joined in this action at this time, other than those as fictitious defendants pled as ABC Corps. 1-10 that may be identified in the course of discovery.

I certify that the foregoing statements made by me are true.  I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

                                         ERIC D. KATZ

DATED:  February 17, 2016

# MAZIE SLATER KATZ & FREEMAN, LLC

COUNSELLORS AT LAW

103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-9898
Fax (973) 228-0303
www.mskf.net

David A. Mazie*
Adam M. Slater*°
Eric D. Katz*°
David M. Freeman
Beth G. Baldinger°
Matthew R. Mendelsohn°

Writer's Direct Dial: 973-228-0151

Karen G. Kelsen°
Cheryll A. Calderon
David M. Estes
Adam M. Epstein°
Jessica CM Almeida°

\* Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

° Member of N.J. & N.Y. Bars

February 26, 2016

Clerk of the Court
Somerset County Superior Court
20 N. Bridge Street
Somerville, New Jersey 08876

Re:   N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co., et al.
      Docket No.: SOM-L-248-16

Dear Sir/Madam:

Enclosed please find an original and one (1) copy of an Affidavit of Diligent Inquiry with regard to the above matter. Kindly file the enclosed document and return a conformed copy to me in the self-addressed stamped envelope provided.

Thank you for your assistance in this matter.

Very truly yours,

ERIC D. KATZ

EDK/av
Enclosures
cc:   Aetna Health, Inc. (w/encl.)

Eric D. Katz | Atty. No. 016791991
David M. Estes | Atty. No. 034532011
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: 973-228-9898
F: 973-228-0303
E: ekatz@mskf.net
*Attorneys for Plaintiff*

| | |
|---|---|
| NORTH JERSEY BRAIN & SPINE CENTER,<br><br>    Plaintiff,<br><br>vs.<br><br>AETNA LIFE INSURANCE CO.; AETNA HEALTH INC.; AETNA HEALTH INSURANCE CO.; and ABC CORPS. 1-10,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIV., SOMERSET COUNTY DOCKET NO. SOM-L-248-16<br><br><br>Civil Action<br><br>**AFFIDAVIT OF DILIGENT INQUIRY** |

STATE OF NEW JERSEY )
                    ) SS:
COUNTY OF ESSEX     )

ERIC D. KATZ, of full age, hereby certifies as follows:

1.      I am an attorney-at-law of the State of New Jersey and a partner with the law firm of Mazie Slater Katz & Freeman, attorneys for plaintiff in the above-captioned matter.

2.      Our research indicates that the defendant Aetna Health, Inc. address is located at 980 Jolly Road, Blue Bell, PA 19422 and our research did not uncover a New Jersey address appropriate for service.

3.    Service upon defendant, Aetna Health, Inc. will therefore have to be made in accordance with R. 4:4-4(b)(1)(C).

_____
ERIC D. KATZ

Sworn and subscribed to before me on this
day of February 2016

_____
A Notary Public of New Jersey

TRACEY ANN COBA
Notary Public
State of New Jersey
My Commission Expires Sep 17, 2019

2

SOMERSET COUNTY SUPERIOR COURT
40 NORTH BRIDGE STREET
1ST FLR PO BOX 3000
SOMERVILLE        NJ 08876-1262

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (908) 231-7054
COURT HOURS  8:30 AM - 4:30 PM

                    DATE:   FEBRUARY 19, 2016
                    RE:     NORTH JERSEY BRAIN VS AETNA
                    DOCKET: SOM L -000248 16

     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.

     DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

     THE PRETRIAL JUDGE ASSIGNED IS:  HON THOMAS C. MILLER

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM        001
AT:  (908) 203-6034.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: ERIC D. KATZ
                              MAZIE SLATER KATZ & FREEMAN
                              103 EISENHOWER PARKWAY
                              ROSELAND        NJ 07068

JUTPUS0

**Appendix XII-B1**

## CIVIL CASE INFORMATION STATEMENT (CIS)



Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY | |
|---|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA | |
| CHG/CK NO. | |
| AMOUNT: | |
| OVERPAYMENT: | |
| BATCH NUMBER: | |

| ATTORNEY/PRO SE NAME<br>Eric D. Katz | TELEPHONE NUMBER<br>(973) 228-9898 | COUNTY OF VENUE<br>Somerset |
|---|---|---|
| FIRM NAME (if applicable)<br>Mazie Slater Katz & Freeman, LLC | | DOCKET NUMBER (when available)<br>L-2418-16 |
| OFFICE ADDRESS<br>103 Eisenhower Parkway, 2nd Floor<br>Roseland, New Jersey 07068 | | DOCUMENT TYPE<br>Complaint |
| | | JURY DEMAND ☒ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff)<br>North Jersey Brain & Spine Center | CAPTION<br>North Jersey Brain & Spine Center v. Aetna Life Insurance Co.; Aetna Health Inc., Aetna Health Insurance Co.; and ABC Corps. 1-10 |
|---|---|
| CASE TYPE NUMBER<br>(See reverse side for listing)<br>599 | HURRICANE SANDY<br>RELATED?<br>☐ YES  ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☒ NO<br>IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING?<br>☒ Yes   ☐ No | IF YES, LIST DOCKET NUMBERS<br>SOM-L-174-16 |
|---|---|
| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes   ☐ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☐ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR<br>RECURRENT RELATIONSHIP?<br>☒ YES   ☐ NO | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE   ☐ FRIEND/NEIGHBOR   ☐ OTHER (explain)<br>☐ FAMILIAL   ☒ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY?   ☐ YES   ☒ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR
ACCELERATED DISPOSITION

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ YES   ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED?<br>☐ YES   ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be
redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

**Side 2**



# CIVIL CASE INFORMATION STATEMENT
## (CIS)
Use for initial pleadings (not motions) under *Rule* 4:5-1

---

## CASE TYPES (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
| | |
|---|---|
| 151 | NAME CHANGE |
| 175 | FORFEITURE |
| 302 | TENANCY |
| 399 | REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | BOOK ACCOUNT (debt collection matters only) |
| 505 | OTHER INSURANCE CLAIM (including declaratory judgment actions) |
| 506 | PIP COVERAGE |
| 510 | UM or UIM CLAIM (coverage issues only) |
| 511 | ACTION ON NEGOTIABLE INSTRUMENT |
| 512 | LEMON LAW |
| 801 | SUMMARY ACTION |
| 802 | OPEN PUBLIC RECORDS ACT (summary action) |
| 999 | OTHER (briefly describe nature of action) |

### Track II - 300 days' discovery
| | |
|---|---|
| 305 | CONSTRUCTION |
| 509 | EMPLOYMENT (other than CEPA or LAD) |
| 599 | CONTRACT/COMMERCIAL TRANSACTION |
| 603N | AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold) |
| 603Y | AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold) |
| 605 | PERSONAL INJURY |
| 610 | AUTO NEGLIGENCE – PROPERTY DAMAGE |
| 621 | UM or UIM CLAIM (includes bodily injury) |
| 699 | TORT – OTHER |

### Track III - 450 days' discovery
| | |
|---|---|
| 005 | CIVIL RIGHTS |
| 301 | CONDEMNATION |
| 602 | ASSAULT AND BATTERY |
| 604 | MEDICAL MALPRACTICE |
| 606 | PRODUCT LIABILITY |
| 607 | PROFESSIONAL MALPRACTICE |
| 608 | TOXIC TORT |
| 609 | DEFAMATION |
| 616 | WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES |
| 617 | INVERSE CONDEMNATION |
| 618 | LAW AGAINST DISCRIMINATION (LAD) CASES |

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
| | |
|---|---|
| 156 | ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION |
| 303 | MT. LAUREL |
| 508 | COMPLEX COMMERCIAL |
| 513 | COMPLEX CONSTRUCTION |
| 514 | INSURANCE FRAUD |
| 620 | FALSE CLAIMS ACT |
| 701 | ACTIONS IN LIEU OF PREROGATIVE WRITS |

### Multicounty Litigation (Track IV)
| | | | |
|---|---|---|---|
| 271 | ACCUTANE/ISOTRETINOIN | 289 | REGLAN |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 278 | ZOMETA/AREDIA | 291 | PELVIC MESH/GYNECARE |
| 279 | GADOLINIUM | 292 | PELVIC MESH/BARD |
| 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL | 293 | DEPUY ASR HIP IMPLANT LITIGATION |
| 282 | FOSAMAX | 295 | ALLODERM REGENERATIVE TISSUE MATRIX |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 296 | STRYKER REJUVENATE/ABG II MODULAR  HIP STEM COMPONENTS |
| 286 | LEVAQUIN | 297 | MIRENA CONTRACEPTIVE DEVICE |
| 287 | YAZ/YASMIN/OCELLA | 601 | ASBESTOS |
| 288 | PRUDENTIAL TORT LITIGATION | 623 | PROPECIA |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

## Please check off each applicable category   ☐ Putative Class Action     ☐ Title 59